UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUCINDA KRLICH, *et al.*, | ) | Case No. 4:20-cv-1190 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| CITY OF HUBBARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Lucinda and Rick Krlich object to the Magistrate Judge's report and recommendation, which recommends that the Court deny Plaintiffs' motion for a temporary restraining order and preliminary injunction against Defendants the City of Hubbard, Mark Villano (the City's Law Director), and Sgt. William Fisher (an officer in the City's police department) because Plaintiffs fail to demonstrate either a substantial likelihood of prevailing on the merits of their underlying suit or irreparable harm.  For the reasons set forth below, the Court agrees with the Magistrate Judge and, accordingly, **OVERRULES** the objections (ECF No. 13), **ADOPTS** the report and recommendation (ECF No. 11), and **DENIES** Plaintiffs' motion for a temporary restraining order and preliminary injunction (ECF No. 6).

## STATEMENT OF FACTS

Plaintiffs' claims relate to an ongoing feud between two families, the Krliches and the Clementes, in Hubbard, Ohio, a small city outside of Youngstown on the Pennsylvania border.  (*See generally* ECF No. 1, PageID #5–6.)  In 2007, after Mary

Clemente passed away, Plaintiffs bid on real estate she owned adjacent to theirs. (*Id.*, ¶ 16, PageID #5.)  John Clemente, Jr., Hubbard's former fire chief, told Plaintiffs to withdraw the bid or become "bitter enemies for life," because the house had been in the Clemente family since 1922. (*Id.*, ¶ 17, PageID #5.)  Plaintiffs did not withdraw their bid, but did not acquire the property either. (*Id.*, ¶ 18, PageID #6.)

Plaintiffs allege that their refusal to withdraw their bid on the Clemente property gave rise to a campaign by members of the Clemente family and their friends to "harass, intimidate, and terrorize" the Krliches. (*Id.*, ¶ 19, PageID #6.)  This campaign includes "speeding down [the Krliches'] street, honking their horns and revving their engines" and "peeling out" when they drove by the Krliches' house, "driving their cars onto" and "discarding trash on" the Krliches' lawn, and "swearing" at them—all of which, Plaintiffs claim, continues to this day. (*Id.*)  Plaintiffs allege thousands of incidents of harassment by members of the Hubbard police and fire departments and their families, as well as by relatives of two local judges. (*Id.*, ¶¶ 21–22, PageID #6–7.)

In efforts to bring this unwanted harassment to an end, Plaintiffs called 911, reported incidents to the Hubbard police, filed lawsuits against their harassers, and occasionally obtained restraining orders. (*Id.*, ¶ 20, PageID #6.)  Since February 1, 2019, Plaintiffs claim Defendants have refused to take any action to investigate any report they make (*id.*, ¶¶ 22 & 24, PageID #7; *see also* ECF No. 13, ¶ 1, PageID #376), even though those reports include violations of local ordinances (ECF No. 1, ¶ 30, PageID #8).

## STATEMENT OF THE CASE

### A.    *Krlich I*

Previously, the Krliches sued the City of Hubbard in federal court, raising claims under 42 U.S.C. § 1983 based on similar factual allegations.  *See Krlich v. Taafe*, No. 4:17-cv-379 (*"Krlich I"*).  In that case, the Court denied injunctive relief and granted Defendants' motion for judgment on the pleadings.  *See Krlich v. Taafe*, No. 4:17CV0379, 2018 WL 4510094, at *6 (N.D. Ohio Sept. 19, 2018); *Krlich v. Taafe*, No. 4:17CV0379, 2018 WL 4537196, at *8 (N.D. Ohio Sept. 19, 2018).  In dismissing that lawsuit, the Court determined that Plaintiffs "simply failed to allege any viable claim, including a class-of-one equal protection claim."  2018 WL 4537196, at *8.

### B.    Allegations in This Action

In this action, Plaintiffs pursue a claim under Section 1983, alleging that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1, PageID #9–10.)  Among other things, Plaintiffs make a "class of one" argument that Defendants selectively deny them protective services.  (*Id.*, ¶ 38, PageID #10; ECF No. 6, PageID #280.)  They argue as well that Defendants enforce a "special written policy" against them (ECF No. 13, PageID #376), although the complaint also alleges no such policy exists (ECF No. 1, ¶ 39, PageID #10).

In addition to pursuing their claim on the merits, Plaintiffs seek a temporary restraining order or a preliminary injunction to enjoin Defendants "from their current practice of refusing to accept and investigate Plaintiffs' complaints, . . . and refusing to enforce Hubbard's ordinances against residents who violate them."  (ECF No. 6,

PageID #275.)  At bottom, the Krliches seek to compel Defendants to stop "treating them as a class of one," to investigate "at least *some* of" their complaints, enforce Hubbard ordinances, and prosecute violations.  (ECF No. 6, PageID #280–81.)

## C.    The Report and Recommendation

On referral of Plaintiffs' motion for injunctive relief for a report and recommendation, the Magistrate Judge promptly held a telephone conference, which Plaintiffs' counsel did not attend.  (ECF No. 8, PageID #303.)  In the subsequent report and recommendation that the Court deny injunctive relief, the Magistrate Judge primarily pointed to the fact that the Krliches failed "to present any argument that they have a likelihood of success on the merits."  (ECF No. 11, PageID #351.)  Further, the Magistrate Judge determined the Krliches failed to provide any "evidentiary support for their claims of irreparable harm."    (ECF No. 11, PageID #352.)  Additionally, the Magistrate Judge noted that the Krliches offered no argument why previous federal lawsuit would not likely bar, at least in part, Plaintiffs' claims in this action.  (ECF No. 11, PageID #351–52.)

Plaintiffs objected to the report and recommendation.  (ECF No. 13.)  First, Plaintiffs object that the report and recommendation "mischaracterizes" the complaint by failing to appreciate that the Krliches argue "that Defendants treat them as a class of one."  (ECF No. 13, PageID #376.)  Second, Plaintiffs object that their 2017 federal lawsuit "did not address, and could not have addressed," the current facts because the conduct of which they complain increased since then.  (*Id.*, PageID #376–77.)  Finally, they object that the "R&R makes a gross generalization"

4

regarding the nature of *Krlich I* compared to this matter. (*Id.*, PageID #377.) In this respect, Plaintiffs take issue with the report and recommendation because it focuses on Defendants' discretionary actions regarding municipal ordinances and ignores Plaintiffs' other claims and evidence of increased harassment since *Krlich I*. (*Id.*) Plaintiffs request that the Court overrule the report and recommendation and grant their request for an injunction.

## LEGAL STANDARD

A district court judge may designate a magistrate judge to "hear or determine any pretrial matter pending before the court," with several exceptions, including motions for injunctive relief. 28 U.S.C. § 636(b)(1)(A). But a district judge may refer a motion for injunctive relief to a magistrate judge for "proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted" by the preceding subsection. *Id.* § 636(b)(1)(B).

After the report and recommendation is filed, if a party objects within the allotted time, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Importantly, the Court's job is not to conduct a free-wheeling examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, it is the Court's task in this

matter to review the Magistrate Judge's report and recommendation de novo, based on the specific objections the Krliches raise.

## ANALYSIS

Plaintiffs' objections to the report and recommendation generally fall into two categories:  (1) how the Magistrate Judge construed Plaintiffs' claims; and (2) the applicability, if any, of *Krlich I* to the present action.  (ECF No. 13, PageID #376–77.) In the Court's view, these objections broadly raise the merits of Plaintiffs' motion for an injunction in their entirety.

### I.    Likelihood of Success on the Merits of Plaintiffs' Equal Protection Claim

When a party seeks a preliminary injunction, a district court balances the following factors:  the movant's likelihood of success on the merits, whether the movant would suffer irreparable injury without an injunction, whether the injunction would cause "substantial harm" to others, and whether the public interest is served. *See Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "And in the case of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'"  *Doe v. University of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)).  As the movants, the Krliches bear "the burden of justifying such relief."  *Wilson*, 961 F.3d at 837 (citing *American Civ. Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015)).

In the report and recommendation, the Magistrate Judge determined that Plaintiffs are not entitled to injunctive relief because they cannot demonstrate a likelihood of success on the merits of their equal protection claim. In that claim, Plaintiffs assert that "Defendants have violated [the Krliches'] right to equal protection of the laws" by failing to investigate, issue citations, or take action against the purported harassment and that "Defendants have failed, refused and continue to fail and refuse to enforce various city ordinances[,]" resulting in Plaintiffs being treated "as a class of one." (ECF No. 11, PageID #348.)  The report and recommendation points out that Plaintiffs "fail to present any argument that they have a likelihood of success on the merits[,]" instead only offering "a conclusory assertion that Defendants are denying their due process rights." (*Id.*, PageID #351.)

Plaintiffs object that, in this regard, the report "mischaracterizes Plaintiffs' Complaint as being based on Defendants" violating their equal protection rights by failing to investigate their complaints. (ECF No. 13, PageID #376.)  Instead, the Krliches argue Defendants both treat them as a "class of one" and subject them to a written policy that results in selective non-enforcement of municipal ordinances warranting injunctive relief. (*Id.*)

### I.A. Plaintiffs' "Class-Of-One" Claim

"[T]he Equal Protection Clause gives rise to a cause of action 'for a class of one.'" *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  "To succeed on this type of claim, a plaintiff must allege either disparate treatment from similarly situated individuals and that the government actors had no rational basis for the

difference" or that "the challenged government action was motivated by animus or ill-will." *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (cleaned up); *see also Olech*, 528 U.S. at 564. "Courts 'generally view' class-of-one claims with skepticism given the potential to 'provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Shavers v. Almont Twp.*, ___ F. App'x ___, No. 20-1291, 2020 WL 6156708, at *4 (6th Cir. Oct. 21, 2020) (cleaned up) (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)). Prevailing on this theory presents a "heavy burden" for plaintiffs. *Loesel*, 692 F.3d at 462.

To succeed on this claim, the Krliches must not only identify similarly-situated individuals to whom they can be compared, but also "'(1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will.'" *Kesterson v. Kent State Univ.*, No. 5:16-CV-298, 2017 WL 995222, at *8 (N.D. Ohio Mar. 15, 2017) (quoting *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007)); *see also Krlich I*, 2018 WL 4510094, at *3–4 (discussing the class-of-one claim under the Equal Protection Clause). To be entitled to a preliminary injunction, however, Plaintiffs need not meet their ultimate burden of proof, but must demonstrate that they are *likely* to succeed at meeting it. They have not done so.

At bottom, the record contains no evidence of similarly situated individuals. But assuming they could identify a similarly situated individual, Plaintiffs are unlikely able to "refute every conceivable basis" Defendants have for enforcing local

8

ordinances the way they have chosen.  Supreme Court precedent routinely reiterates

a "deep-rooted nature of law-enforcement discretion, even in the presence of

seemingly mandatory legislative commands[,]" which includes enforcement of city

ordinances.  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005) (discussing

*Chicago v. Morales*, 527 U.S. 41, 47 (1999)).  This precedent cuts against Plaintiffs'

likelihood of success on the merits.

Additionally, the Krliches face evidentiary hurdles.  For example, Exhibit 1 to

their motion is a standard form police report.  (ECF No. 6-1, PageID #286.)  The

document appears to have been created after Mr. Krlich called to report tire marks

in his yard.  (*Id.*, PageID #288.)  Not only did the officer respond to the call and report

the incident, but the written report notes Mr. Krlich only "wanted the incident

documented for a matter of record."  (*Id.*)  Such a police response makes it unlikely

Plaintiffs can meet the high standard for a class-of-one equal protection claim.

Another exhibit is a letter from Mr. Villano, Hubbard's law director, advising

Mr. Krlich that the police will investigate complaints of ongoing noise violations if he

calls the city's non-emergency number.  (ECF No. 6-4, PageID #298–99.)  This

evidence does not indicate Defendants lack all rational bases for their actions, again

making it unlikely Plaintiffs will succeed on their claims.  Nor does any of Plaintiffs'

other evidence alter this determination.  For example, docket reports from several

state court civil matters involving the Krliches—the most recent of which closed some

two years ago—and a decade-old Facebook post involving non-parties to this action

fail to make success on their claims likely.  (ECF Nos. 6-2 & 6-3, PageID #289–91;
ECF No. 6-6, PageID #301.)

Alternatively, the Krliches could demonstrate a likelihood of success on the
merits by showing that Defendants acted with animus or ill will.  The Sixth Circuit
"define[s] these terms as reflecting a 'deep-seated and sometimes virulent' act of
'antagonism,' 'hostility,' and 'animosity.'"  *Shavers*, 2020 WL 6156708, at *5 (quoting
*Loesel*, 692 F.3d at 466).  "Put differently, 'a plaintiff must prove that the challenged
government actions were motivated by personal malice unrelated to the defendant's
official duties.'"  *Id.* (quoting *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x
826, 838 (6th Cir. 2009)).

Considering the evidence provided, and even construing it and the allegations
in the complaint in Plaintiffs' favor, it is unlikely the Krliches will be able to succeed
on this prong of their class-of-one claim either.  Simply, the bar the Sixth Circuit sets
is too high for the Krliches to clear.  Even where they might be able to do so, the
Krliches are unlikely to show that the actions at issue are unrelated to Defendants'
official duties.  For these reasons, the Court agrees with the report and
recommendation that Plaintiffs are unlikely to succeed on the merits of their equal
protection claim.

**I.B.  The Krliches' Claim Regarding the Written Policy Against Them**

Arguing that the Magistrate Judge failed to address their claim that they are
subjected to a written policy encouraging or permitting the harassment against them,
the Krliches also object to the report and recommendation.  (ECF No. 13, PageID
#376.)  To be sure, an actual written policy directly encouraging the harassment of,

10

or condoning non-responsiveness to Plaintiffs' purported plight would raise serious constitutional concern.  But the record contains no evidence of such a policy.  Contrary to the objection to the report and recommendation, the complaint disclaims the existence of such a written policy.  (ECF No. 1, ¶ 39, PageID #10 ("[T]here is no 'official' City or County policy permitting this campaign against Plaintiff to continue.").)  Instead, giving Plaintiffs the benefit of the doubt, the objection appears to rest on faxes the Krliches send to the Hubbard police, which are not investigated to their liking.  (*See id.*, ¶¶ 22 & 23, PageID #7.)  Such a practice is a far cry from a written policy that specifically targets the Krliches or condones harassment of them.  Instead, this objection—so construed—constitutes a complaint regarding how the Hubbard police deal with faxes.  But the handling of faxes does not implicate constitutional concerns here.  Such claims fail to persuade the Court that Plaintiffs are likely to succeed on the merits of this claim either.

Therefore, the Court overrules Plaintiffs' objections directed at the report and recommendation's treatment of the merits of their claims.

## II.     Claim or Issue Preclusion Based on *Krlich I*

The report and recommendation recites that "in 2017, Plaintiffs filed a Section 1983 action in this Court invoking federal question jurisdiction and seeking injunctive and monetary relief for a violation of their rights under the Equal Protection Clause of the Fourteenth Amendment" related to Defendants' "complicity and active pursuit in a campaign to harass, intimidate, and terrorize Plaintiffs." (ECF No. 11, PageID #349 (internal quotation omitted).)  It goes on to note that the

11

Krliches "sought preliminary and permanent injunctive relief in the 2017 case[,]" which the Court ultimately denied because they "failed to state a class-of-one claim upon which relief could be granted." (*Id.* (citing *Krlich I*, at p. 8–9 (cleaned up).)

Plaintiffs object to this characterization, arguing *Krlich I* "did not address, and could not have addressed, many of the items/incidents/events/facts contained in Plaintiffs' current Complaint because they had not yet occurred." (ECF No. 13, PageID #376–77.) They also object that the report and recommendation "makes a gross generalization" comparing the nature of the claims at issue in *Krlich I* and those alleged here. (*Id.*, PageID #377.)

Construing these objections as attacks on the report and recommendation for relying on preclusion doctrines based on *Krlich I*, the Court has two responses. First, the disposition of Plaintiffs' constitutional claims in *Krlich I* may well have preclusive effect for the Krliches claims here—just as a final judgment in this action will bind the parties and preclude future claims or defenses. At this stage of the proceedings, however, the Court need not plumb the depths of preclusion doctrine because Plaintiffs' claims arising since *Krlich I* are not likely to succeed on the merits for the reasons explained above. Second, the report and recommendation expressly declined to address the effect of *Krlich I* or base a decision on it. Instead, the Magistrate Judge found *Krlich I* to be persuasive in its reasoning, not preclusive in its holding: "While it is not necessary to determine at this juncture whether this action is barred by res judicata or collateral estoppel as a result of the 2017 litigation, the [Magistrate Judge]

12

finds persuasive the reasoning of and the opinions in that case[.]"  (ECF No. 11, PageID #353.)  Accordingly, the Court also overrules these objections.

### III.    Irreparable Harm, Balancing of the Equities, and Public Interest

Finally, the Court briefly considers the remaining factors for determining whether injunctive relief is warranted.  Notwithstanding the Court's conclusion that Plaintiffs' claim is likely to fail on the merits, district courts must "weigh the strength of the four factors against one another."  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019) (citations omitted).  There are three remaining considerations— irreparable injury, a balancing of the equities, and the public interest.

The report and recommendation determined that the Krliches failed to provide "evidentiary support for their claims of irreparable harm" and that a Facebook post "from over 10 years ago" is not enough to justify emergency relief.  (ECF No. 11, Page ID #352.)  Further, the Magistrate Judge assumed that, even if the equities and public interest favor an injunction, Plaintiffs' failure on the other two factors— likelihood of success on the merits and irreparable injury—was fatal.  (ECF No. 11, PageID# 352–53.)  The Court agrees.  Weighing all considerations for the issuance of an injunction, the Court declines to do so.

### CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiffs' Objections (ECF No. 13), **ADOPTS** the Report and Recommendation (ECF No. 11), and **DENIES** Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 6).

**SO ORDERED.**

Dated:  January 7, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio

14