UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LUCINDA KRLICH, *et al.*, | ) | Case No. 4:20-cv-1190 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| CITY OF HUBBARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Lucinda and Rick Krlich assert an equal protection claim under 42 U.S.C. § 1983 against Defendants the City of Hubbard, Mark Villano (the City's law director), and Sgt. William Fisher. This claim arises out of years of what Plaintiffs allege is official harassment and deliberate non-enforcement of municipal ordinances stemming from a family dispute. In a separate opinion and order contemporaneous with this ruling, the Court overrules Plaintiffs' objections to the report and recommendation of the Magistrate Judge (ECF No. 13), adopts the report and recommendation (ECF No. 11), and denies Plaintiffs' motion for a temporary restraining order and preliminary injunction (ECF No. 6). In this ruling, for the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 5) and **DISMISSES** the Complaint (ECF No. 1).

### STATEMENT OF FACTS

Nearly fifteen years ago, Lucinda and Rick Krlich bid in an auction on a piece of property in Hubbard, Ohio. Based on the facts alleged in the complaint, and taking

them as true as the Court must at this stage of the proceedings, that bid sparked a family feud that continues today—most immediately in the form of this lawsuit.

        **A.**     **The Alleged Facts Underlying Plaintiffs' Claim**

In 2007, Mary Clemente passed away in Hubbard, Ohio, a small city outside of Youngstown on the Pennsylvania border. (*Id.*, ¶¶ 14 & 16, PageID #5.) Plaintiffs bid on real estate Mary Clemente owned adjacent to theirs. (*Id.*, ¶ 16, PageID #5.) When the Krliches bid on that property, they drew the ire of John Clemente, Jr., the decedent's nephew and former Hubbard fire chief. (*Id.*, ¶¶ 15–17, PageID #5.) Specifically, the Krliches allege that after learning about the bid, John Clemente threatened them to withdraw their bid, warning that if the sale went through the two families would be "bitter enemies for life." (*Id.*, ¶ 17, PageID #5.) The Krliches refused, and at the close of the auction they were the highest bidders. (*Id.*, ¶ 18, PageID #6.) But "title to the property did not pass to Plaintiffs as it should have," they allege. (*Id.*)

As a result of their bid, the Krliches claim the Clemente family, along with their friends and coworkers, "began a campaign" to "harass, intimidate, and terrorize" them. (*Id.*, ¶ 19, PageID #6.) Purportedly, they carried out this campaign by "speeding down Plaintiffs' street, honking their horns and revving their engines" and "peeling out" whenever they were near the Krliches' house, "driving their cars onto . . . [and] discarding trash on" the Krliches' lawn, and "swearing at" the Krliches with impunity. (*Id.*) This incessant honking, screeching tires, and revving engines occurs at "all hours of the day and night[.]" (*Id.*, ¶ 21, PageID #6–7.) Moreover, the Krliches allege that Hubbard councilmen, police officers, firefighters, township

2

officials, school bus drivers, and two relatives of a municipal court judge all join in. (*Id.*)

"Plaintiffs have recorded [*sic*] *thousands* of these incidents to the Hubbard Police Department[.]" (*Id.*, ¶ 22, PageID #7.) And the Krliches claim the police refuse to investigate any of these complaints. (*Id.*) For example, in July 2019, Mr. Krlich alleges he called the police dispatch center and requested a sergeant to come investigate a "disturbance," but was met with indifference: the police "advised KRLICH 'the complaints that you fax into the police department are given a complaint number and are entered into the matter-of-record but no after the fact follow up is performed[.]" (*Id.*, ¶ 23, PageID #7.) At that point, the report indicates Mr. Krlich became "agitated" and berated the responding officer. (*Id.*)

Although the Krliches admit the police conduct "spot checks" near their home, since July 2019, the police have otherwise refused to respond to the Krliches' calls. (*Id.*, ¶¶ 24–25, PageID #7.) They claim they are being singled out. (*Id.*, ¶ 25, PageID #7.) With this response from the police, the Krliches also complained to the City of Hubbard and Mr. Villano (its law director). (*Id.*, ¶¶ 30–33, PageID #8–9.)

**B.**     ***Krlich I***

In 2017, the Krliches sued the City of Hubbard and its police chief at the time, James Taafe, in federal court, raising claims under 42 U.S.C. § 1983 based on similar factual allegations. *See Krlich v. Taale*, No. 4:17-cv-379 (*"Krlich I"*). In that case, the Krliches asserted several claims, including: (1) a substantive due process violation of quiet enjoyment of property; (2) an equal protection violation based on the defendants' "alleged refusal to investigate and/or prosecute hundreds of individuals";

3

and (3) a claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), against the City of Hubbard for a "policy or custom" that ensured the complaints of the Krliches would be ignored. *See Krlich I*, 2018 WL 4537196, at *2–5. The Court granted judgment on the pleadings in favor of the defendants. *See id.* at *8.

### C. Plaintiffs' Claim in This Case

In this case, Plaintiffs assert a single claim against the City of Hubbard, Mr. Villano, and Sgt. Fisher, alleging that they violated the Equal Protection Clause and are liable under 42 U.S.C. § 1983. (ECF No. 1, ¶¶ 34–40, PageID #9.) Within this single count, the Krliches accuse the City of (1) failing to investigate their complaints, (2) failing to cite or warn "hundreds of perpetrators" who have violated city ordinances, and (3) accuse Mr. Villano and Sgt. Fisher of "directly participating" in the harassment against them. (*Id.*, ¶ 36, PageID #9–10.) Further, they allege that all these actions amount to a pattern or practice of the City's "malice, spite, and ill will" toward them, on which they also base their Section 1983 claim. (*Id.*, ¶ 40, PageID #10.) The Krliches seek an injunction, actual damages, and fees. (*Id.*, ¶¶ A–C, PageID #10–11.) Defendants move to dismiss this action.

### ANALYSIS

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted. *Darby v. Childvine,*

*Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not. *Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up). Nor does a court accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A complaint must offer more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This standard ensures that a plaintiff "does not unlock the doors of discovery . . . armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Against the backdrop of this familiar standard, the Court turns

5

to the various theories Plaintiffs assert under the single cause of action alleged. But first Defendants raise a procedural defense to Plaintiffs' claims based on *Krlich I*.

**I.      Res Judicata**

"Res judicata 'precludes parties from contesting matters that they have had a full and fair opportunity to litigate.'" *Arangure v. Whitaker*, 911 F.3d 333, 337 (6th Cir. 2018) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). In federal cases, the "preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)); *Amos v. PPG Indus., Inc.*, 699 F.3d 448, 451 (6th Cir. 2012) (same). In short, "a right, question, or fact distinctly put in issue, and directly determined by a court . . . cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Southern Pac. R. Co. v. United States*, 168 U.S. 1 (1897).

"There are two types of res judicata—issue preclusion and claim preclusion," the former of which applies here. *Amos*, 699 F.3d at 451 (citing *Taylor*, 553 U.S. at 892). Issue preclusion, also known as collateral estoppel, "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). Therefore, the doctrine "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The doctrine prevents "repetitive litigation of the same issue between the same parties[,]"

6

so that "if two parties actually litigated an issue in a prior case, and a court necessarily decided the issue pursuant to entry of a final judgment, then the losing party cannot relitigate the issue against the winner in a later case." *Amos*, 699 F.3d at 451. "Essentially, parties get one chance to litigate an issue of fact or law." *Pogue v. Principal Life Ins. Co.*, 979 F.3d 534, 536 (6th Cir. 2020).

### I.A.  The Effect of *Krlich I*

In *Krlich I*, Plaintiffs based their claim on the same type of conduct underlying the allegations in this case: the defendants' alleged "complicity and active pursuit in a campaign to harass, intimidate, and terrorize" the Krliches. *Krlich I*, 2018 WL 4537196, at *1. As here, Plaintiffs premised their earlier action on the "Hubbard Defendants' alleged refusal to investigate and/or prosecute hundreds of individuals" for harassing them and that despite reporting to the police, they were ignored. *Id.* at *4.

In granting judgment on the pleadings for the defendants, the Court in *Krlich I* determined that the equal protection claim failed for two reasons. First, the complaint there alleged on its face that the police did respond and investigate, at least at times. *Id.* Therefore, the allegations did not support the claim asserted. Second, the claim failed "as a matter of law" because "there is no 'constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.'" *Id.* (citing *White v. City of Toledo*, 217 F. Supp. 2d 838, 839 (N.D. Ohio 2002)).

The Court concludes that *Krlich I* has preclusive effect and bars Plaintiffs' claim in this action. In *Krlich I*, the same plaintiffs asserted the same cause of action

7

they seek to litigate here—a single claim under Section 1983 against the City of Hubbard and two of its officials, claiming violations of the equal protection clause. Although the specific identities of those individuals do not line up neatly, res judicata operates where an earlier action involved the same parties *or their privies*, and any argument that the individual defendants in the two different cases lack privity with the City of Hubbard has no merit.

Further, in *Krlich I* the complaint alleged factual bases for the claim substantially similar to those here: the defendants' were complicit or engaged in "a campaign to harass, intimidate, and terrorize" the Krliches, the defendants' refused "to investigate and/or prosecute hundreds of individuals" for the harassment, and defendants maintained a practice or policy of ignoring the Krliches' reports and complaints. *Krlich I*, 2018 WL 4537196, at *1, *4. At bottom, in this case the Krliches raise the same legal claim based on substantially similar underlying factual allegations they previously had a full and fair opportunity to litigate—a classic case of issue preclusion for which the doctrine is intended.

### I.B.   Allegations of Events Since 2017

Plaintiffs maintain that, since their first suit, Defendants have persisted in their harassment and increased its frequency and severity. For this reason, they argue that numerous factual and substantive differences between this case and *Krlich I* foreclose application of res judicata. The problem with this argument is that the identity of the issue litigated in the previous suit determines whether issue preclusion applies. *See, e.g., Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (citations omitted) (applying preclusion to patent litigation

8

because "the patents use slightly different language to describe substantially the same invention"). Where two lawsuits involve allegations based on the same or substantially similar past events, preclusion doctrine treats the issues in the second case as actually litigated and decided in the first, notwithstanding evidentiary differences in the two cases, particularly where, as here, the cases apply the same legal standards. *See, e.g.*, *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 445 (6th Cir. 2010). This case involves the same claim raised under the same legal standards at issue in *Krlich I*, applied in the same way, to facts that do not differ in kind from those previously litigated.

To try avoid the preclusive effect of *Krlich I*, Plaintiffs point to "Defendants' new written policy precluding any investigation or follow-up on any of Plaintiffs' complaints/reports to" the police. (ECF No. 12, PageID #358.) But the complaint belies the existence of any such policy. (ECF No. 1, ¶ 39, PageID #10 ("[T]here is no 'official' City or County policy permitting this campaign against Plaintiff to continue.").) Construing the allegations most favorably in favor of Plaintiffs, as the Court must, Plaintiffs' argument on this point appears to rest on faxes the Krliches send to the Hubbard police, which are not investigated to their liking. (*See id.*, ¶¶ 22 & 23, PageID #7.) Such a practice is a far cry from a written policy that specifically targets the Krliches or condones their harassment. Under preclusion doctrine, such an allegation presents no material factual difference to Plaintiffs' claim in *Krlich I*.

In the end, even construing the allegations in the complaint most favorably in Plaintiffs' favor, the Krliches had a full and fair opportunity to litigate their claims

9

against the City of Hubbard in their earlier lawsuit. Any new facts alleged here do not, in the Court's view, differ materially to avoid application of res judicata.

## II. Plaintiffs' Equal Protection Claim Under Section 1983

Even if the Court agreed with Plaintiffs that the alleged facts occurring since 2017 suffice to avoid the preclusive effect of *Krlich I*, their claim fails on the merits, regardless of the theory on which Plaintiffs attempt to proceed.

### II.A. Class-of-One Equal Protection Claim

"[T]he Equal Protection Clause gives rise to a cause of action 'for a class of one.'" *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "To succeed on this type of claim, a plaintiff must allege either disparate treatment from similarly situated individuals and that the government actors had no rational basis for the difference" or that "the challenged government action was motivated by animus or ill-will." *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (cleaned up); *see also Olech*, 528 U.S. at 564. "Courts 'generally view' class-of-one claims with skepticism given the potential to 'provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Shavers v. Almont Twp.*, ___ F. App'x ___, No. 20-1291, 2020 WL 6156708, at *4 (6th Cir. Oct. 21, 2020) (cleaned up) (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)). Prevailing on this theory presents a "heavy burden" for plaintiffs. *Loesel*, 692 F.3d at 462.

To succeed, the Krliches must not only identify similarly situated individuals to whom they can be compared, but also "'(1) refute every conceivable basis that might

10

support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will.'" *Kesterson v. Kent State Univ.*, No. 5:16-CV-298, 2017 WL 995222, at *8 (N.D. Ohio Mar. 15, 2017) (quoting *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007)). "The first element requires that the plaintiff and the others who were treated differently were 'similarly situated in all relevant aspects.'" *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020) (White, J., writing for the majority as to the class-of-one claim) (citing *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012)).

Even at the pleading stage, Plaintiffs fail to allege facts that meet this standard. First, the Krliches fail to identify a Hubbard resident who is similarly situated to them in relevant respects. They certainly try, alleging on information and belief that the police "do not refuse" to investigate other residents' "calls, reports, or complaints" and then cite to a police report related to someone who "nearly hit the caller's dog" on a dirtbike. (ECF No. 1, ¶¶ 25–27, PageID #7–8.) On the face of it, this comparison suffers from deep flaws. For example, danger to persons or companion animals differs than the nuisances and property damage of which the Krliches complain. And complaints about ongoing events differ from reports after the fact.

But assuming that this comparison were "similarly situated in all relevant aspects" to the Krliches, Plaintiffs fail to allege facts that make the second component of the claim plausible—that that the City lacks any rational basis or demonstrates animus or ill-will. Here, Plaintiffs offer little more than legal conclusions, which the

11

Court does not credit on a motion to dismiss. For these reasons, Plaintiffs' class-of-one claim fails to state a claim that survives a motion to dismiss.

### II.B. Plaintiffs' Additional Theories

Beyond the fundamental merits of their equal protection claim, Plaintiffs' complaint and briefing appears to argue various additional theories, particularly against Mr. Villano and Sgt. Fisher, each of whom the City of Hubbard employs, in their official and individual capacities. Each lacks merit as well.

### II.B.1. Failure to Train

To assert a failure-to-train claim, a plaintiff "must point to a specific action of each individual supervisor" because Section 1983 liability must be predicated on something more than *respondeat superior* liability. *Phillips v. Roane Cnty.*, 534 F.3d 531, 543–44 (6th Cir. 2008) (quotation omitted) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Such a claim requires allegations of both (1) a deprivation of a right the Constitution or laws of the United States secure, and (2) that a person acting under the color of state law caused that deprivation. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). "The inadequacy of police training may serve as the basis for § 1983 only when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To state a Section 1983 claim on such a theory, the Krliches "must establish that the inadequate training was the moving force behind the violation of [their] constitutional rights." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

12

Here, Plaintiffs allege no facts that support a claim for failure to train. Nor do any of their allegations, construed in the Krliches' favor, give rise to an inference of deliberate indifference, prior unconstitutional action, or a failure by anyone the City employs, let alone by Mr. Villano or Sgt. Fisher, to take corrective measures in the face of prior constitutional violations. Instead, the Krliches make conclusory allegations, including that "there is an obvious need for Hubbard to train, supervise, and discipline its police officers" and that both Mr. Villano and Sgt. Fisher "have exhibited a deliberate indifference to Plaintiffs' plight." (ECF No. 1, PageID #8–9.) These allegations flatly assert that "the police officers and police chief [are required] to undergo training," which the City of Hubbard fails to provide "despite the obvious need" for it. (*Id.*, PageID #9.)

These sorts of conclusory allegations are precisely the type the Court does not accept under the governing Rule 8 standard, and they are legally insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Moreover, in a Section 1983 action, a defendant is "only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Simply "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" is insufficient "to satisfy [the] minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests[.]" *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012).

13

### II.B.2. Immunity

Defendants maintain that Mr. Villano and Sgt. Fisher are entitled to immunity against Plaintiffs' claim by virtue of their positions with the City of Hubbard at the relevant times. Additionally, Defendants argue that Plaintiffs waived the issue by failing to respond to the argument in briefing. *See, e.g.*, *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citations omitted). Between the waiver and Plaintiffs' failure to state a constitutional violation, the Court declines to address the issue further.

### II.B.3. Claims Against Mr. Villano and Sgt. Fisher in Their Official Capacities

That leaves Plaintiffs' official-capacity claims against Mr. Villano and Sgt. Fisher. Claims against these defendants in their official capacities amount to a claim against the City. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). In other words, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). As a result, "there is no longer a need to bring official-capacity claims against local government officials." *Graham*, 473 U.S. at 167 n.14. Accordingly, the Court dismisses Plaintiffs' official-capacity claims against Mr. Villano and Sgt. Fisher.

### II.B.4. *Monell* Claim

Finally, Plaintiffs seek to hold the City of Hubbard liable based on their claims of its alleged unconstitutional policies or customs. In *Krlich I*, the Court granted

14

judgment on the pleadings in favor of the defendants on a *Monell* claim, reasoning that there could be no municipal liability under Section 1983 in the absence of a constitutional violation. *Krlich I*, 2018 WL 4537196, at *5.

Even if some aspect of Plaintiffs' claim survives the bar of preclusion doctrine, the same reasoning applies here. That is, because Plaintiffs have failed to state a claim for a constitutional violation by an individual acting under the color of law, they cannot maintain a *Monell* claim against the City. Moreover, as stated above, the Krliches disclaim the existence of a written policy pursuant to which the City of Hubbard may be liable, even if there were a constitutional violation. Although "a pervasive custom or practice, of which the city lawmakers know or should know," may support a claim under *Monell*, *see Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994), Plaintiffs give such scant argument to proceeding on such a theory (ECF No. 12, PageID #366–67) that they have waived it, *see Humphrey*, 279 F. App'x at 331 ("[I]ssues referred to in a perfunctory manner without developed argumentation are deemed waived.").

### III. Leave to Amend

One procedural matter remains to address. In the final paragraph of their opposition to Defendants' motion to dismiss, Plaintiffs seek leave to amend their complaint. In its entirety, Plaintiffs' request for leave to amend consists of the following:

> Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss, and, in the event the Court finds Plaintiffs' Complaint to lack sufficient facts or detail to state an Equal Protection claim, that the Court grant them leave to file an Amended Complaint to more completely state their claims.

15

(ECF No. 12, PageID #368.)  Plaintiffs do not attach a proposed amendment or otherwise indicate what allegations they might seek to add.

Although Rule 15 generally directs a court to give leave to amend freely, Fed. R. Civ. P. 15(a)(2), perfunctory amendment requests at the end of a brief without citation to case law or even the rule are inadequate.  *See Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019).  In any event, on the totality of the record and the arguments, the Court determines that any proposed amendment would likely prove futile.

## CONCLUSION

For all the foregoing reasons above, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 5), **DISMISSES** the Complaint (ECF No. 1), and **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: January 7, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio